UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAHIDUR RAHMAN,<br><br>Petitioner,<br><br>-v.-<br><br>JUDITH ALMODOVAR, *in her official capacity as Acting New York Field Office Director, U.S. Immigration & Customers Enforcement ("ICE")*; KRISTI NOEM, *in her official capacity as Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *in his official capacity as Acting Director of ICE*; and PAMELA BONDI, *in her official capacity as Attorney General, U.S. Department of Justice*,<br><br>Respondents. | 25 Civ. 10203 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

In November 2024, Petitioner Wahidur Rahman, a Bangladeshi national, entered the United States from Mexico without inspection. (Dkt. #1 ("Petition") at ¶¶ 1, 4; Dkt. #8 ("Resp. Opp.") at 1). Petitioner was served with a Notice to Appear, charging him as inadmissible under the Immigration and Nationality Act (the "INA") and directing him to appear before an immigration judge at 26 Federal Plaza in Manhattan on a specified date. (Resp. Opp. 1 & Ex. 1). Initially, Petitioner was released on his own recognizance; however, when he appeared for an appointment at 26 Federal Plaza on December 9, 2025, U.S. Immigration and Customs Enforcement ("ICE") officials canceled his order of release and took him into custody. (*Id.*, Ex. 2).

That same day, Petitioner filed a petition for a writ of habeas corpus seeking relief from detention under 28 U.S.C. § 2241. (Petition). On

December 10, 2025, the Court issued an Order directing Respondents to file a letter discussing whether this case was distinguishable from previous immigration habeas cases decided by the Court. (Dkt. #4). On December 12, 2025, Respondents acknowledged that the case was not substantively different from a prior decision in which the Court had granted an analogous habeas petition, *see Ortiz-Lopez* v. *Francis*, No. 25 Civ. 7985 (KPF), Dkt. #13 (S.D.N.Y. October 22, 2025). (Resp. Opp. 2). "While reserving all rights, including the right to appeal," and while contending that the Court's prior decision was incorrect, Respondents "acknowledge[d] that [the *Ortiz-Lopez*] decision would control the result in this case if the Court adheres to the legal holdings in that decision, as the pertinent facts of this case appear to be materially indistinguishable." (*Id.* at 2, 3). In consequence, the Court granted Petitioner's habeas petition by Order dated December 12, 2025. (Dkt. #10).

On February 9, 2026, Petitioner sought attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (Dkt. #14 ("Pet. Fees Br.")). On April 28, 2026, Respondents filed a brief in opposition to Petitioner's request. (Dkt. #19 ("Resp. Fees Opp.")). Petitioner filed a reply submission later that same day. (Dkt. #20 ("Pet. Fees Reply")).

**APPLICABLE LAW**

Under Section 2412, "a court shall award to a prevailing party ... fees and other expenses" incurred in a "civil action" brought against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

28 U.S.C. § 2412(d)(1)(A); *see also Gomez-Beleno* v. *Holder*, 644 F.3d 139, 144 (2d Cir. 2011) ("[U]under the EAJA, eligibility for a fee award in any civil action requires: [i] that the claimant be a 'prevailing party'; [ii] that the Government's position was not 'substantially justified'; and [iii] that no 'special circumstances make an award unjust.'" (quoting *Commissioner, INS* v. *Jean*, 496 U.S. 154, 158 (1990))); *accord Merlo Puerto* v. *Leeper*, — F. Supp. 3d —, No. 26 Civ. 405 (NRM), 2026 WL 1600665, at *3 (E.D.N.Y. June 4, 2026). As relevant here, "[c]ivil actions include habeas petitions 'challenging immigration detentions.'" *Barco Mercado* v. *Francis*, 811 F. Supp. 3d 487, 506 (S.D.N.Y. 2025) (quoting *Vacchio* v. *Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005)).[1]

"A party prevails if the court grants relief to the party based on an assessment of the merits and thus unquestionably and materially alters the existing legal relationship between the parties." *Yao* v. *Almodovar*, 813 F. Supp. 3d 461, 478 (S.D.N.Y. 2025) (citation omitted). "Once a party has demonstrated that it is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" *Williams* v. *Kijakazi*, 797 F. Supp. 3d 164, 171 (E.D.N.Y. 2025) (quoting *Commodity Futures Trading Comm'n* v. *Dunn*, 169 F.3d 785, 786 (2d

[1] In a footnote to their opposition submission, Respondents acknowledge that "[t]he Second Circuit has held that habeas petitions are 'civil actions' for the purposes of the EAJA," citing *Vacchio*, but state that there is a circuit split on the issue and that they are preserving the issue for appeal. (Resp. Fees Opp. 3 n.1). On June 29, 2026, the United States Supreme Court granted certiorari in *Palacios* v. *Liggins*, No. 25-1223, 2026 WL 1855057, at *1 (U.S. June 29, 2026). The question presented in *Palacios* is whether the "any civil action" language found in the EAJA, 28 U.S.C. § 2412(d)(1)(A), encompasses an action seeking a writ of habeas corpus to challenge civil immigration detention. Neither side has asked the Court to stay its decision pending the Supreme Court's resolution of *Palacios*.

Cir. 1999)). This requires a showing that its litigation position and the underlying agency action giving rise to that position "had a reasonable basis in both law and fact." *See Vacchio*, 404 F.3d at 674 (citation omitted); *see also Gomez-Beleno*, 644 F.3d at 145 ("The 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." (quoting 28 U.S.C. § 2412(d)(2)(D))).

Any attorneys' fees awarded must be "reasonable." *See* 28 U.S.C. § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees" below "$125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee"); *see generally Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."); *Galeas Miranda* v. *Maldonado*, No. 25 Civ. 6882 (PKC), 2026 WL 2031685, at *2 (E.D.N.Y. July 14, 2026) (discussing reasonableness of attorneys' fees in the EAJA context).

**ANALYSIS**

Respondents concede that Petitioner qualifies as a prevailing party, and do not dispute the reasonableness of the fees sought. (Resp. Fees Opp. 9 n.2).[2]

---

2 To be sure, Respondents' position on reasonableness was based on Petitioner seeking attorneys' fees for 8.5 hours of work at $280.87 per hour. (Pet. Fees Br. 4-5). Petitioner now seeks an additional 4 hours for time spent reviewing and responding to

Instead, they argue that fees are not warranted under the EAJA because (i) their actions were "substantially justified" and (ii) special circumstances render a fee award improper in this case. (*Id.* at 5-9). The Court addresses each argument in turn.

To review, Respondents "bear[ ] the burden of showing that [their] position was 'substantially justified,' which the Supreme Court has construed to mean 'justified to a degree that could satisfy a reasonable person.'" *Ericksson* v. *Comm'r of Social Security*, 557 F.3d 79, 81 (2d Cir. 2009) (quoting *Pierce* v. *Underwood*, 487 U.S. 552, 556 (1988)). To do so, Respondents must show that *both* the underlying agency action "upon which the civil action is based" and "the [litigation] position taken by the United States in the civil action" to defend that agency action had a "reasonable basis in both law and fact." *Id.* at 82 (citation omitted); *see also* 28 U.S.C. § 2412(d)(2)(D). "The issue for EAJA purposes is not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation." *Dunn*, 169 F.3d at 787 (citing *Pierce*, 487 U.S. at 565).

By arguing against attorneys' fees, Respondents are implicitly contending that "ICE's actions in detaining [Petitioner] without any process, or its broader

---

Respondents' opposition brief. (Pet. Fees Reply 6). The Court does not believe that this modest addition changes Respondents' position on the reasonableness of the fees sought. After all, the hourly rate remains the same, and the expenditure of 4 hours to review and respond hardly seems excessive. To the extent that Respondents' position has since changed, the Court finds that the hourly rate and number of hours for which attorneys' fees are sought are both reasonable.

decision to change its long-settled practice and begin subjecting similarly situated noncitizens to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), were substantially justified." *Patel* v. *Almodovar*, No. 26 Civ. 1420 (DLC), 2026 WL 1649635, at *3 (S.D.N.Y. June 8, 2026) (noting that the respondents in that case did not make such an argument). The Court finds such an argument to be curious, in light of the Second Circuit's recent evisceration of that position in *Barbosa de Cunha* v. *Freden*, 175 F.4th 61 (2d Cir. 2026):

> For nearly thirty years, [Petitioner's request for a bond hearing] would have been granted and Petitioner — whom the government concedes poses no danger to the community nor risk of flight — would have been released during the pendency of his removal proceedings, pursuant to 8 U.S.C. § 1226. However, in July 2025, the government changed that long-settled practice. *See* U.S. Immigr. & Customs Enf't, (July 8, 2025). To justify detaining noncitizens (or "aliens") who clearly meet the government's own criteria for release, the government began arguing that 8 U.S.C. § 1225(b)(2)(A) prohibits the setting of bond for all inadmissible noncitizens, like Petitioner, unlawfully present in the United States — by all accounts, millions of men, women, and children. The government claims that mandatory detention must continue regardless of how long removal proceedings take — even if the noncitizen poses no danger to the community or risk of flight.
>
> That is not what the law says. Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not

> apprehended while entering the country or shortly thereafter.
>
> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

*Id.* at 69 (footnote omitted); *see also Galeas Miranda*, 2026 WL 2031685, at 5 ("The government cannot 'revisit[ ] [its] legal position' for policy reasons without due care for its soundness as a matter of law, point to a lack of controlling authority foreclosing it due to its novelty, and then claim its position was 'substantially justified' because no authorities had yet found it unjustified. Finding that the government's actions under such circumstances were 'substantially justified' would undermine "the EAJA's fundamental objective to encourage individuals to challenge governmental policies that are not 'substantially justified.'"" (internal footnotes omitted) (quoting *Healey* v. *Leavitt*, 485 F.3d 63, 68 (2d Cir. 2007))).

For avoidance of doubt, this Court is not suggesting that Respondents should have been psychic; it understands that the appropriate time frame for the "substantially justified" inquiry is the time of Respondents' conduct, *i.e.*, December 2025. However, the straightforward statutory text and history, as well as the uniformity of interpretation among executive, legislative, and judicial branches, necessarily communicated to Respondents that their newly-

minted interpretation of Section 1225 was certain to fail. *See also Barco Mercado*, 811 F. Supp. 3d at 494 (observing, in November 2025, that "[b]y a recent count, the central issue in this case — the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed — has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States. *Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.*" (emphasis added)); *see generally Barbaro da Cunha*, 175 4th at 92-93 ("Accordingly, where an agency has long failed to reach for a power and only later changes its mind, we may consider that as persuasive evidence that the power was never conferred in the first place.").[3]

Using a similar analysis, the Court rejects Respondents' argument that its litigation positions before the Court in December 2025 were substantially

---

[3] *See also Merlo Puerto* v. *Leeper*, — F. Supp. 3d —, No. 26 Civ. 405 (NRM), 2026 WL 1600665, at *5 (E.D.N.Y. June 4, 2026) (internal citations omitted):

> Importantly for purposes of the instant motion, the Second Circuit made clear that its rejection of Respondents' position did not involve a novel or difficult issue of statutory interpretation. Instead, the *Cunha* Court concluded — in no uncertain terms — that "the government's attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose." Indeed, the *Cunha* opinion was replete with findings making clear that Respondents' claimed interpretation of the statute was far from "substantially justified." ... The *Cunha* Court also made clear that its interpretation of the statutory text did not take place in a precedential vacuum.

justified. As support for their position that the law did not foreclose their Section 1225 arguments, Respondents note that: (i) the Board of Immigration Appeals (the "BIA") had issued a decision adopting ICE's application of Section 1225(b)(2) (Resp. Fees Opp. 6 (citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)); (ii) the Fifth and Eighth Circuits have subsequently adopted ICE's position (*id.* (collecting cases)); and (iii) before the Second Circuit resolved the issue in *Barbosa da Cunha*, five judges in this District had adopted ICE's position (*id.* (collecting cases)). Significantly, however, at the time of the challenged conduct, Respondents had only the BIA decision in support; the circuit and district court cases on which they now rely (save one decision issued from the Western District of New York one week before Petitioner was detained) were issued after this Court's grant of Petitioner's habeas petition. What is more, the decisions from this District that *were* out there had uniformly rejected ICE's interpretation of Section 1225(b)(2). *See, e.g.*, *Perez Agustin* v. *Joyce*, No. 25 Civ. 10122 (AT), 2025 WL 3564494, at *2 (S.D.N.Y. Dec. 12, 2025); *Campbell* v. *Almodovar*, No. 25 Civ. 9509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025), *opinion clarified*, 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025); *Rivera Esperanza* v. *Francis*, 817 F. Supp. 3d 187, 192 (S.D.N.Y. 2025) (Abrams, J.); *Quispe-Sulcaray* v. *Noem*, No. 25 Civ. 9908 (VEC), 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025); *Sun* v. *Almodovar*, No. 25 Civ. 9262 (PKC), 2025 WL 3241268, at *2 (S.D.N.Y. Nov. 20, 2025); *Cardenas* v. *Almodovar*, No. 25 Civ. 9169 (JMF), 2025 WL 3215573, at *1 (S.D.N.Y. Nov. 18, 2025); *Tumba* v. *Francis*, No. 25 Civ. 8110 (LJL), 2025 WL

3079014, at *7-8 (S.D.N.Y. Nov. 4, 2025); *Lopez Benitez* v. *Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (Ho., J.).

Given the precedential landscape just described, it is no surprise that district courts in this Circuit have rejected analogous claims that Respondents' litigation position was substantially justified. One of the most recent decisions in this area, involving a petitioner whose habeas petition was granted a few days after Petitioner's, contains an analysis of Respondents' position that is equally applicable to the instant case:

> As early as August 13, 2025, a court in the Southern District of New York held that Respondents' litigation position was legally incorrect, *see Lopez Benitez* v. *Francis*, 795 F. Supp. 3d 475, 491 (S.D.N.Y. 2025) (Ho, J.), and a court in this District held the same on September 29, 2025, *see J.U.* v. *Maldonado*, 805 F. Supp. 3d 482, 494 (E.D.N.Y. 2025) (Merchant, J.). After *J.U.*, and before Respondents filed their response papers here, at least ten more decisions in this District came to the same conclusion that Respondents' position was legally incorrect. Furthermore, as Respondents acknowledged in espousing their litigation position, *this* Court had already found the same, and Respondents' only argument for continued detention of Petitioner was that they "respectfully disagree[d] with th[is] Court's ruling" in that case. (O.S.C. Resp., Dkt. 10 at 4 (citing Order, *R.A.R.R.* v. *Almodovar*, No. 25-CV-6597 (PKC) (E.D.N.Y. Dec. 19, 2025).) This consistent and substantial record of courts in this District rejecting Respondents' position, with only scant support elsewhere in the Circuit, weighs strongly against finding that Respondents' litigation position was "substantially justified" at the time they advanced it in this case. *See Pierce*, 487 U.S. at 569 (recognizing that "a string of losses can be indicative" of a litigation position not being "substantially justified").

*Galeas Miranda*, 2026 WL 2031685, at *4; *see also Osuna* v. *Francis*, No. 25 Civ. 9823 (RA), 2026 WL 1906362, at *4 (S.D.N.Y. July 1, 2026) ("[A]t the time

it made the relevant pre-litigation and litigation decisions in this case, there was no circuit split on the relevant legal issue, and the clear weight of authority, both in this District and nationwide, cut against, rather than supported, its position. In the face of this line of authority, the Court cannot conclude that the Government's continued maintenance of its litigation position was 'justified to a degree that could satisfy a reasonable person.'"); *L.S.M.* v. *Genalo*, No. 26 Civ. 942 (JAV), 2026 WL 1906418, at *2 (S.D.N.Y. July 1, 2026) ("Courts across the country have recently found, either expressly or implicitly, that the Government's litigation position lacks substantial justification under the EAJA in similar circumstances.") (collecting cases).

As an alternate basis for denial, Respondents argue that "special circumstances make [the] award unjust." (Resp. Fees Opp. 8-9 (citing 28 U.S.C. § 2412(d)(1)(A)). At first blush, this argument sounds like an end-run around the requirements of the "substantially justified" exception, and the Court is loath to reward Respondents for conduct that it has found not to be substantially justified. Perhaps more importantly, this Court has found no district court in this Circuit that has accepted Respondents' argument. To the contrary, in a recent decision, Judge Cote examined the Second Circuit cases recognizing the special circumstances exception and concluded that they were inapt. *See Patel*, 2026 WL 1649635, at *3 ("The Second Circuit has only spoken twice in published opinions on the question of what would constitute 'special circumstances [that] make an award unjust,' and neither opinion is analogous here.") (citing *Oguachuba* v. *INS*, 706 F.2d 93, 99 (2d Cir. 1983), and

*United States* v. *27.09 Acres of Land*, 43 F.3d 769, 773 (2d Cir. 1994)); *see also id.* ("The two opinions cited by respondents [*Taylor* v. *United States*, 815 F.2d 249 (3d Cir. 1987), and *Roanoke River Basin Ass'n* v. *Hudson*, 991 F.2d 132 (4th Cir. 1993)] are out-of-circuit and similarly inapposite."). The Court accordingly declines to find "special circumstances" on this record.[4]

**CONCLUSION**

Petitioner's motion for attorneys' fees is GRANTED. Petitioner is awarded fees in the amount of $3,438.47, to be paid by Respondents within 30 days of the date of this Order unless the parties agree to a different schedule.

The Clerk of Court is directed to terminate the motion pending at docket entry 14.

SO ORDERED.

Dated: August 18, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge

[4] The Court's investigation of case law from other districts discloses a handful of instances in which applications for attorneys' fees under the EAJA for analogous habeas petitions have been denied under the "substantially justified" exception, but it has found no such denials under the "special circumstances" exception. *See, e.g.*, *Llanos Leon* v. *Bondi*, No. 25 Civ. 337 (SLH) (RAL), 2026 WL 1975385, at *2 n.1 (W.D. Pa. May 26, 2026) (report and recommendation), *adopted in part*, 2026 WL 1679052 (W.D. Pa. June 10, 2026) (not addressing attorneys' fees issue); *Lopez* v. *Trump*, 816 F. Supp. 3d 492, 495 (D. Vt. 2026).